Joseph WILSON, Petitioner-Appellant,

v.

David HARRIS, Superintendent, Green Haven Correctional Facility, Respondent-Appellee.

No. 200, Docket 78–2084.

United States Court of Appeals, Second Circuit.

Argued Sept. 29, 1978.

Decided March 19, 1979.

---

Amanda Potterfield, New York City (Daniel J. Steinbock, Prisoners' Legal Services of New York, New York City, on brief), for petitioner-appellant.

Clement H. Berne, Deputy Asst. Atty. Gen., New York City (Louis J. Lefkowitz, Atty. Gen. of the State of New York, and Samuel A. Hirshowitz, First Asst. Atty. Gen., New York City, of counsel, on brief), for respondent-appellee.

Before WATERMAN, FRIENDLY and MULLIGAN, Circuit Judges.

PER CURIAM:

Appellant Joseph Wilson, an incarcerated New York State prisoner, appeals from an order of the United States District Court for the Southern District of New York (Owen, J.) dismissing his petition for the issuance of a writ of habeas corpus to be directed to the Superintendent of Green Haven Correctional Facility, the state facility within which petitioner is confined.[1] Wilson was tried *in absentia* and convicted by a jury in December 1972 in the New York Supreme Court for New York County. After the trial he was given an indeterminate sentence with concurrent terms of from 5 years to 15 years for burglary and 2⅓ years to 7 years for robbery. He contends that, inasmuch as he was not present at his trial, the rights guaranteed to him under the sixth and fourteenth amendments to the United States Constitution were violated. We find no merit to this contention and affirm the dismissal of his petition.

First, we agree with the district judge that petitioner has exhausted his state court remedies, his conviction having been affirmed by the Appellate Division, First Department, and that court having affirmatively found that there had been no violation of petitioner's sixth and fourteenth amendment rights. Leave to appeal to the New York Court of Appeals was timely denied.

When tried, Wilson was in custody in lieu of bail. The state attempted to bring its prosecution on for trial and was frustrated by a continuing series of contumacious acts by Wilson. When his first assigned counsel stated that he was ready for trial Wilson moved to relieve him, and a second attorney was assigned. The second attorney re-

---

1. The petition before us is the second one petitioner has brought to the district court below. District Judge Owen determined the first one on its merits and, filing a lengthy memorandum, dismissed the petition. Appeal was taken and the dismissal was affirmed on the ground that petitioner had failed to exhaust his state remedies, *Wilson v. Fogg,* 571 F.2d 91 (2d Cir. 1978). Following federal court dismissal the state remedies were admittedly exhausted, and a second petition was filed. This petition was assigned to Judge Owen; and, as no new facts were alleged in the new petition, he dismissed it on the basis of his previous decision. The within appeal followed.

quested one month to prepare his case, which was granted. Thereafter, on December 4, 1972, with Wilson in the courtroom the New York Assistant District Attorney again moved the case for trial. Wilson then, screaming and yelling, vented his anger, and so conducted himself that the decorum of the courtroom was disrupted and the presiding judge walked out. Trial was scheduled for December 7. In the morning of December 7, pursuant to orders of the trial judge, Wilson's counsel and the prosecutor went to the Manhattan House of Detention to interview Wilson, who knew that his trial was to begin that day. They reported that Wilson refused to see them or to see anyone connected with the case and on that day he had reaffirmed his refusal "to come to court."

After this refusal the judge, satisfied that Wilson, knowing his trial was to begin forthwith, had voluntarily waived his right to be present, began the trial. Wilson was represented by his assigned counsel. A jury was drawn. On December 8, prior to the introduction of any evidence, defense counsel reported that Wilson was in the courthouse and had been persuaded to attend court. However, because it was necessary for a criminal defendant to traverse a public corridor, the state had a regulation that en route from the courthouse detention room to the courtroom a defendant in a criminal case would have to be handcuffed, and this regulation provided Wilson with another excuse. Now, claiming that the handcuffing would be violative of his constitutional rights, he refused to go into the courtroom and stated to his second assigned attorney: "You are not my lawyer anymore." Thereupon, the court ordering assigned counsel to proceed to represent Wilson, the trial continued without the defendant's presence and a jury conviction followed.

The district judge, after careful examination of the allegations contained in the petitions, "found that Wilson had knowingly and voluntarily waived his right to be present during his trial by his deliberate decision not to appear despite continued orders and invitations by the court both before and during the proceedings." *Wilson v. Fogg*, 571 F.2d 91, 92.

■ The issues before us are whether the record adequately sets forth that petitioner knew of his trial, knew that his trial was to start on December 7, 1972, and that, so informed, he deliberately endeavored to frustrate its commencement and continuation and, therefore, knowingly and voluntarily waived his constitutional rights to be present throughout the trial; and whether, the petitioner being in custody, it was necessary either for him to have been physically brought before the state trial judge so that there could be a record in open court of the waiver or for that judge to have used other means to obtain an express waiver from the defendant. Petitioner also contends that the trial judge abused his discretion in proceeding without the petitioner present even if a sufficient waiver could be found.[2]

■ The record demonstrates that it was quite proper for the federal district judge to dismiss petitioner's application. Petitioner knew when his trial was to begin, and he had no unilateral right to determine the time or the circumstances under which he would stand trial. *United States v. Crutcher*, 405 F.2d 239 (2d Cir. 1968), *cert. denied*, 394 U.S. 908, 89 S.Ct. 1018, 22 L.Ed.2d 219 (1969). His flat refusal to attend the trial was, without question, an explicit and intentional relinquishment of a known right and an undeniable waiver of his constitutional right to be present in court at the trial and to confront adverse witnesses. He knew on December 7 that

---

**2.** Petitioner also contends that in any event he was denied due process of law inasmuch as the trial court failed to require a competency examination to insure a valid waiver of his constitutional right to be present at trial. We agree with the district court that there is no merit to this claim. The record discloses only that peti-

tioner attempted to disrupt, not that there was a reasonable ground to believe him incompetent to stand trial or to waive his right to be present at his trial. *See United States ex rel. Roth v. Zelker*, 455 F.2d 1105, 1108 (2d Cir.), *cert. denied*, 408 U.S. 927, 92 S.Ct. 2512, 33 L.Ed.2d 340 (1972).

his trial was to start that day, and on December 8 he knew that it was in process. His decisions and actions support the findings of the district judge and satisfy the test laid down by this court in *United States v. Tortora*, 464 F.2d 1202, 1209 (2d Cir.), *cert. denied*, 409 U.S. 1063, 93 S.Ct. 554, 34 L.Ed.2d 516 (1972). *See also Taylor v. United States*, 414 U.S. 17, 94 S.Ct. 194, 38 L.Ed.2d 174 (1973). He had the opportunity to be present but, by his own volition, chose to forego that opportunity.[3]

Petitioner makes much of the circumstance that, as he was in custody, the state trial judge did not order correction officers to present him in court, presumably by force if necessary, so that his waiver of his rights, made in open court, might become a part of the record of the case, or use some other means to obtain an express personal waiver. Indeed, we agree such could have been the better practice, *United States v. Crutcher* at 244, and we recommend that procedure; but here the intentional waiver, reported to the court by counsel, is sufficiently vouched for as to render this preferred practice unnecessary. *See also People v. Epps*, 37 N.Y.2d 343, 372 N.Y.S.2d 606, 334 N.E.2d 566, *cert. denied sub nom. Epps v. New York*, 423 U.S. 999, 96 S.Ct. 430, 46 L.Ed.2d 374 (1975). *Compare Cross v. United States*, 117 U.S.App.D.C. 56, 325 F.2d 629 (1963).

We have warned that a trial judge should not readily proceed to trial of a defendant who has waived his right to be present. *See United States v. Tortora, supra*, 464 F.2d at 1210; *United States v. Toliver*, 541 F.2d 958, 964 (2d Cir. 1976). Indeed, we have stated that "this discretion should be exercised only when the public interest clearly outweighs that of the voluntarily absent defendant," and have speculated that exercise of such discretion may only be appropriate in multiple-defendant cases. *United States v. Tortora, supra*, 464 F.2d at

1210 and n. 7. Petitioner, however, had, in the words of the district judge, "as the trial on his indictment neared . . . [begun] what, in the context of the complete record, can only by regarded as an attempt at disrupting the processes of justice, by one means or another." By moving to relieve his first assigned counsel when that counsel was ready for trial, petitioner had already caused a substantial delay while new counsel prepared the case. His disruptive behavior on December 4, 1972, was also intended to cause delay. The Supreme Court has observed that the accused cannot

> be permitted by his disruptive conduct indefinitely to avoid being tried on the charges brought against him. It would degrade our country and our judicial system to permit our courts to be bullied, insulted, and humiliated and their orderly progress thwarted and obstructed by defendants brought before them charged with crimes.

*Illinois v. Allen*, 397 U.S. 337, 346, 90 S.Ct. 1057, 1062, 25 L.Ed.2d 353 (1970). In the circumstances presented here, the public interest in an orderly system of justice and conservation of judicial resources clearly outweighed whatever interest petitioner had in remaining absent from his trial.

As petitioner's deliberate refusal to attend his trial is clear on the record, and the weighty interest of the state is apparent, the district judge did not abuse his discretion in dismissing the petition and the dismissal is *affirmed*.

---

**3.** Whatever force was once exerted by the dictum that a defendant in custody does not have the power to waive his right to be present at his trial, *see Diaz v. United States*, 223 U.S. 442, 455, 32 S.Ct. 250, 56 L.Ed. 500 (1912); *United States v. Crutcher, supra*, 405 F.2d at 243, has been diminished by *Illinois v. Allen*, 397 U.S. 337, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970), which held that a defendant who persistently behaves disruptively at his trial may lose his right to be present.